# Logan & Lowry, LLP

THOMAS J. McGEADY
MARK W. CURNUTTE
LEONARD M. LOGAN, IV
DONNA L. SMITH
ROBERT ALAN RUSH
DAVID E. JONES
TODD E. KOLCZUN
MICHAEL T. TORRONE
JOHN P. SEIDENBERGER
RYAN H. OLSEN
QUINN STINE
NATHAN M. BLOOMER

OF COUNSEL
RICHARD W. LOWRY
O. B. JOHNSTON, III

LAW OFFICES
101 SOUTH WILSON STREET
P. O. BOX 558
VINITA, OKLAHOMA 74301-0558
TELEPHONE (918) 256-7511
FAX (918) 256-3187

GROVE
102 EAST 3RD STREET
P. O. BOX 452469
GROVE, OK 74345-2469
TELEPHONE (918) 786-7511
FAX (918) 786-8667

J. DUKE LOGAN (1931-2013)
CHARLES E. WEST (1947-2014)

May 5, 2015

***<u>Via Fax (918) 295-7800 and U.S. Mail</u>***

Jason Rush, Esquire
RODOLF & TODD
2000 Mid-Continent Tower
401 South Boston Ave.
Tulsa, OK 74103

    Re:    *Frances Harvey, Administratrix of the Estate of Earlene Frances Harvey,*
           *deceased v. Dr. Luis V. Gorospe; Wagoner Hospital Authority, d/b/a*
           *Wagoner Community Hospital; Quorum Health Resources, LLC; Jane Does*
           *I-X; and John Does I-X;* in the United States District Court for the Eastern
           District of Oklahoma; Case No. 6:14-CV-00219-SPS

Dear Jason:

    The purpose of this letter is to respond to your letter of May 4, 2015.  The following is my response to each of your specific comments:

    2.    The credentialing of physicians including Dr. Gorospe for the conduct of bariatric
           surgeries including Roux-en-Y gastric bypass surgery.

    The topic is designed to identify credentialing in general terms including specific issues involved in Dr. Gorospe's credentialing.  We do not intend to inquire respecting the credentialing of any other specific physician.

    5.    The history of Dr. Gorospe including any medical malpractice actions or allegations
           involving Dr. Gorospe.



EXHIBIT
C

Page 2


As set forth in my prior correspondence, I believe the statute (Okla. Stat. tit. 63, § 1-1709.1(C) identifies the discoverable peer review information. This discoverable information includes factual statements presented during a peer review process utilized by the health care facility. Also, if the National Practitioner's Data Bank is accessed and reviewed during the peer review process, I think it is appropriate to discuss what information was considered by the hospital in credentialing Dr. Gorospe without attempting to shield information under a broad claim that it's included as a part of the National Practitioner's Data Bank. Please let me know if you have any authority indicating that information the hospital reviews which may have come from the National Practitioners Data Bank is not the proper subject of inquiry even if it was considered in issuing credentials to Dr. Gorospe given we have a negligent credentialing claim against the hospital.

Finally, your response appears to completely ignore the plaintiff's claims against Wagoner Hospital for hospital liability as detailed in *Strubhart v. Perry Memorial Hosp. Trust Auth.*, 1995 OK 10, 903 P.2d 263 (Okla. 1995). In *Strubhart*, the court held:

> We impose a duty of ordinary court care on hospitals
> to take reasonable measures to ensure patient safety
> when they are on notice or should be on notice they
> have granted staff privileges to an incompetent doctor.
> This potential theory of recovery is generally known
> as corporate negligence or responsibility. In our view,
> testimony about a doctor's prior conduct is admissible
> if the hospital, through its personnel knows or should
> know with the exercise of ordinary care of the prior
> conduct, and the prior conduct of the doctor is such
> that a hospital exercising ordinary care would take
> some steps to either monitor or discipline the doctor.
>
> * * *
>
> The doctrine of corporate negligence has since been
> utilized by courts to require hospitals to exercise
> reasonable care to ensure that the physicians selected
> as members of hospital medical staffs are competent.
> Jurisdictions adopting corporate negligence have also
> held that hospitals have a continuing duty to review
> and delineate staff privileges so that incompetent staff
> physicians are not retained.

In short, *Strubhart* makes clear that the credentialing of a physician is not the only relevant inquiry. The relevant and proper inquiry also concerns what the hospital did to verify the accuracy

Page 3

of the information provided by the physician. The standard also requires an inquiry into the physician's competence and the hospital's knowledge of any incompetent behavior once staff privileges are granted. Accordingly, the delineation of the inquiry as: "The history of Dr. Gorospe including any medical malpractice actions or allegations involving Dr. Gorospe" is a proper subject of inquiry.

 7. The investigations and results of any investigation respecting the competence of Dr. Gorospe before he was granted staff privileges.

I'm not sure I understand your response or comments respecting item 7. I believe the *Strubhart* case quoted above spells out the basis for liability and proper discovery topics.

 8. The numbers and outcomes of bariatric surgeries, including Roux-en-Y gastric bypass surgery at Wagoner Community Hospital.

Our intended inquiry involves only Dr. Gorospe. As set forth above, under *Strubhart*, the independent corporate responsibility doctrine imposes a duty of ordinary care on hospitals to ensure that only competent physicians are granted staff privileges and once staff privileges are granted hospitals take reasonable steps to ensure patient safety. At a minimum, we are entitled to inquire if there were any problems or complications from gastric bypass surgeries performed by Dr. Gorospe through which the hospital knew or should have known that Dr. Gorospe engaged in a pattern of incompetent behavior. This includes "untoward results" after Dr. Gorospe was granted privileges.

 9. Any instance of misconduct by Dr. Gorospe or behavior that was questioned by Wagoner Community Hospital.

*See comments above.* *Strubhart* clearly states that once staff privileges are granted the hospital has to take reasonable steps to ensure patient safety when it knows or should know that the physician has engaged in a pattern of incompetent behavior. Accordingly, whether Wagoner Community Hospital observed any instances of misconduct or incompetent behavior by Dr. Gorospe prior to or after he was credentialed is the proper subject of inquiry.

 10. All efforts undertaken by Wagoner Community Hospital to monitor the performance of Dr. Gorospe.

*See comments above.*

 11. Any examples or instances of incompetent behavior by Dr. Gorospe.

*See comments above.* Specifically we are entitled to inquire into whether Wagoner Community Hospital knew or should have known that Dr. Gorospe had engaged in a pattern of

Page 4

incompetent behavior before or after he was granted staff privileges.  Again, this is specifically identified as the required showing under *Strubhart* and therefore the proper subject of discovery.

    12.    Any reports of any staff, independent contractors, employees or patients of Wagoner Community Hospital respecting Dr. Gorospe.

*See comments above.*

    13.    The doctors and qualifications of doctors covering Dr. Gorospe's bariatric surgery patients.

We need to know whether Wagoner Community Hospital has any other bariatric surgeons which are qualified to perform gastric bypass surgery or address complications of a gastric bypass surgery performed at Wagoner Hospital by Dr. Gorospe.  Essentially, who covers for Dr. Gorospe when he is not on call.

I would appreciate it if you would review my comments above and give me a call at your earliest convenience to discuss any differences of opinion we may have respecting the proper subject of inquiry.  In any event, I do not want to delay the scheduling of the Wagoner Community Hospital corporate representative as various deadlines are approaching.  It would seem that we should be able to narrow any differences to the point that we can conduct a meaningful deposition of the hospital representative and (if necessary) let the court address any problems or issues as they arise or after the deposition is conducted.

Sincerely,

Robert Alan Rush
For the Firm

RAR/mg