IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) FRANCES HARVEY, ADMINISTRATRIX OF THE ESTATE OF EARLENE FRANCES HARVEY, DECEASED,<br><br>  Plaintiff,<br><br>v.<br><br>(1) LUIS V. GOROSPE, M.D.;<br>(2) WAGONER HOSPITAL AUTHORITY, d/b/a WAGONER COMMUNITY HOSPITAL;<br>(3) QUORUM HEALTH RESOURCES, LLC;<br>(4) JANE DOES I-X; and (5) JOHN DOES I-X,<br><br>  Defendants. | Case No. 6:14-CV-00219-RAW |

**PLAINTIFF'S RESPONSE TO DEFENDANTS WAGONER
HOSPITAL AUTHORITY d/b/a WAGONER COMMUNITY
HOSPITAL AND QUORUM HEALTH RESOURCES, LLC'S
<u>NOTICE OF TRIAL CONFLICT</u>**

COMES NOW Frances Harvey, Administratrix of the Estate of Earlene Frances Harvey, deceased, (Plaintiff) and submits her Response to Defendant Wagoner Hospital Authority d/b/a Wagoner Community Hospital's (Hospital) Motion to Quash Plaintiff's Rule 30(B)(6) Notice to Take Deposition of Corporate Representative (Document 64).

**PROCEDURAL BACKGROUND**

Counsel for Plaintiff and Hospital discussed the timing and content of a 30(B)(6) deposition in regards to Plaintiff's negligence claim against Hospital related to to Dr. Gorospe Hospital privileges. On April 29, 2015, Plaintiff corresponded with Hospital, listing 14 subjects upon which a corporate representative would be deposed. *See* Exhibit A to Wagoner Community Hospital's

Motion to Quash Plaintiff's Rule 30(B)(6) Notice to Take Deposition of Corporate Representative (Document 64) (hereafter "Hospital Motion").  On May 4, Hospital's attorney responded with concerns about (1) credentialing of other physicians, (2) National Practitioner Data Bank (NPDB) and peer review information about Dr. Gorospe, (3) outcomes regarding Roux-En-Y Gastric Bypass Surgery, (4) Dr. Gorospe's misconduct after privileges were granted, (5) monitoring Dr. Gorospe, and (6) qualifications of doctors providing cross-coverage for Dr. Gorospe's bariatric patients.  *See* Exhibit B to Hospital Motion.

On May 5, 2015, Plaintiff's attorney responded that (1) he was not seeking information regarding credentialing of other physicians; (2) Okla. Stat. tit 63, §1-1709.1(C) identifies discoverable peer review information; NPDB information considered during peer review is not broadly shielded from discovery; and *Strubhart* liability encompasses hospital investigations to verify accuracy of physician-provided information and continuing attention to physician competence; (3) the Roux-En-Y outcomes involved only Dr. Gorospe's surgeries; (4) incidents of incompetence or misconduct by Dr. Gorospe prior to and after credentialing are discoverable; (5) *Strubhart* liability encompasses monitoring physicians for misconduct; and (6) he was entitled to determine if the Hospital provided qualified bariatric surgeons to care for patients when Dr. Gorospe was not on call. *See* Exhibit C to Hospital Motion.  Plaintiff's counsel requested that Hospital's attorney call at his earliest convenience if differences of opinion continued to exist.  Plaintiff's counsel explained the necessity of completing the 30(B)(6) deposition in light of various approaching deadlines.  *Id.*

Thereafter, on May 7, 2015, Plaintiff's attorney mailed the 30(B)(6) notice to Hospital.  The Notice included the same 14 topics listed in the April 29, 2015, correspondence and an added topic covering decedent's care.  *See* Exhibit D to Hospital Motion.  On May 13, 2015, Hospital's attorney

advised he was meeting with the Hospital people on that day. *See* Exhibit A attached hereto (May 13 email stream between Plaintiff's attorney Robert Rush and Hospital's attorney Grant Fitz). He asked that the May 19 date be stricken due to busy schedules. *Id.* Hospital's attorney suggested several dates, including May 27. *Id.* Plaintiff's attorney agreed to May 27. *Id.* Hospital's attorney again stated *he would be meeting with the Hospital people on that date, May 13, and would advise who the corporate representative would be. Id.*

In the May 13, 2015, email exchange, Hospital's attorney had no complaints about the deposition topics. *Id.* In addition, Hospital's attorney provided no follow up to the May 5, 2015, correspondence from Plaintiff's counsel which requested further discussion if "differences of opinion" continued to exist regarding deposition topics. *See* Exhibit C to Hospital Motion. Nonetheless, on Friday afternoon, May 22, 2015, immediately prior to the Memorial Day Holiday, Hospital's attorney filed his Motion to Quash, complaining that he "has not had an opportunity to fully investigate the best corporate representative to provide testimony on the issues. . . ." and that he "objects to certain deposition topics." Hospital Motion at page 2.

## ARGUMENT AND AUTHORITIES

**I.     Information regarding a hospital's initial and ongoing knowledge of physician competency is subject to discovery.**

Oklahoma hospitals have a duty to take reasonable measures to ensure incompetent physicians are not granted privileges and to ensure that retained physicians do not create a risk to the hospital's patients. *Strubhart v. Perry Memorial Hosp. Trust Auth.*, 1995 OK 10, 903 P.2d 263. The Oklahoma Supreme Court has imposed a duty on hospitals to ensure that only competent physicians are granted staff privileges and to protect patients from physicians who have exhibited a pattern of

incompetence. *Id*. at 267-77, 268. Thus, a plaintiff's attorney is entitled to discover and elicit "testimony about a doctor's prior conduct . . . if the hospital, through its personnel, knows or should know with the exercise of ordinary care of the prior conduct, and the prior conduct of the doctor is such that a hospital exercising ordinary care would take some steps to either monitor or discipline the doctor." *Id.* at 273 (citation omitted).

While the Supreme Court in *Strubhart* could not list all types of evidence which would be admissible, it did note that evidence of prior malpractice lawsuits or "untoward results in prior cases" could show the "hospital knew or should have known staff privileges have been granted to an incompetent doctor." *Id.* The Court analogized a hospital's negligence to that of an automobile owner who had entrusted a car to a negligent driver, *i.e.* evidence of previous reckless driving acts or inability to drive safely would be admissible to show what the entrustor knew or should have known. *Id.* at 274. The Oklahoma Supreme Court quoted the Ohio Supreme Court regarding a hospital's duty to investigate and verify the accuracy of an application and to scrutinize the credentials of an applicant. *Id.* at 276, quoting *Albain v. Flower Hospital*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990), *overruled on other grounds, Clark v. Southview Hospital & Family Health Center*, 68 Ohio St.3d 435, 628 N.E.2d 47 (1994).

The Oklahoma Supreme Court also noted that a "*hospital should become aware through its peer review process*" that a physician may be engaging in incompetent behavior. *Strubhart*, 903 P.2d at 276(emphasis added). "[K]nowledge, either actual or constructive, is an essential factor in determining whether the hospital exercised reasonable care or was negligent." *Id.* at 278 (citation omitted). Thus, the Court contemplated that a plaintiff could discover what a hospital's actual or

constructive knowledge regarding a physician might be, including knowledge the hospital received through the peer review processes conducted at the hospital.

> **II. Oklahoma's statute regarding discovery of credentialing and peer review information must be read in light of the corporate negligence created in *Strubhart*.**

The Oklahoma Legislature enacted Okla. Stat. tit. 63, §1709.1, effective November 1, 1999, to address the privilege and discoverability of peer review and credentialing information. Under the statute, the peer review process includes the process by which a hospital reviews or evaluates the competence and professional conduct of a doctor. *Id.* at §1-1709.A.6. Credentialing, which is part of the peer review process, includes the process to assess and review a doctor's credentials. *Id.* at §1-1709.1A.2.

If a hospital is sued for *Strubhart* corporate negligence, the following are subject to discovery: (1) the patient's medical records; (2) credentialing and recredentialing data, *i.e* the doctor's application, information submitted by the doctor in support of the application, non-privileged information obtained during the credentialing process, and the hospital's decision; (3) recommendations made and action taken as a result of any peer review process prior to the alleged negligence, (4) incident reports regarding health care services "regardless of how the reports or documents are titled or captioned," (5) the identity of persons with personal knowledge of a patient's treatment, (6) factual statements regarding a patient's treatment which were generated outside the peer review process, and (7) the identity and copies of all documents and raw data previously created elsewhere and considered during the peer review process, whether available elsewhere or not. *Id.* at §1-1709.1.A.1 and §1-1709.D.1.

When §1-1709.1 is considered with *Strubhart*, the statute cannot be interpreted to protect the hospital's knowledge of the doctor's background, previous conduct, and continuing conduct at a hospital. As noted by Hospital, the statute was designed to protect those persons who participate in the actual peer review meetings and process, so that open communication can occur and health services can be improved. *See* Exhibit F to Hospital Motion, Oklahoma's New Peer Review Statute, 1999 Oklahoma Bar Journal, page 2; Hospital Motion at pages 5-6. If the purpose is to improve health care, communication should occur with the hospital and the doctor whose conduct is in question. As stated in the article, the initiation of a peer review process should be properly documented. Then a court can decide whether the information and documents at issue are protected by the privilege. Exhibit F, at page 3. If the statute and privilege are not considered together, it could become impossible to establish *Strubhart* liability, *i.e.* to elicit "testimony about a doctor's prior conduct . . . if the hospital, through its personnel, knows or should know with the exercise of ordinary care of the prior conduct, and the prior conduct of the doctor is such that a hospital exercising ordinary care would take some steps to either monitor or discipline the doctor." *Strubhart*, 903 P.2d at 273. While the hospital should become aware of incompetence through its peer review process, the hospital's "knowledge, either actual or constructive, is an essential factor in determining whether the hospital exercised reasonable care or was negligent." *Id.* at 278.

**III.  Hospital improperly seeks to quash information which is relevant and discoverable.**

A.  Hospital improperly avers that Plaintiff is seeking information regarding credentialing of other physicians, citing subject area #13 in Plaintiff's 30(B)(6) Notice.

Page 6

#13:  "The doctors and qualifications of doctors cross-covering Dr. Gorospe's bariatric surgery patients."

Plaintiff is not seeking privileged information.  This subject area does not involve another surgeon's application for credentials.  It does not involve a peer review committee recommendation regarding granting privileges to another surgeon.  As noted in Plaintiff counsel's May 5, 2015, letter to Hospital's attorney:

> We need to know whether Wagoner Community Hospital has any other bariatric surgeons which are qualified to perform gastric bypass surgery or address complications of a gastric bypass surgery performed at Wagoner Hospital by Dr. Gorospe.  Essentially, who covers for Dr. Gorospe when he is not on call.

*See* Exhibit C to Hospital Motion, page 4.  Plaintiff is entitled to know whether the Hospital had arrangements for cross coverage for bariatric patients.  Hospital is not entitled to quash this subject area.

B.    Hospital improperly avers that Plaintiff cannot seek information that postdates the surgery date and that persons involved in the peer review process are forbidden to testify about the process, citing subject areas #5, #7, #8, #10 [and #9].

#5:  "The history of Dr. Gorospe, including any medical malpractice actions or allegations involving Dr. Gorospe."

Hospital complains that if this information was obtained during the course of the peer review process, it is privileged.  Contrary to Hospital's argument, this is the very type of information that *Strubhart* liability is based upon.  As noted above, the Oklahoma Supreme Court stated that evidence of prior malpractice lawsuits or "untoward results in prior cases" could show the "hospital knew or should have known staff privileges have been granted to an incompetent doctor."  *Strubhart,* 903

P.2d at 273 (citation omitted). Further, the peer review privilege statute specifically excludes from "peer review information" "copies of all documents. . . . previously created elsewhere and considered during the peer review process, whether available elsewhere or not. . . ." Okla. Stat. tit. 63, §1-1709.1.A.5.f. In addition, a party asserting that information or documents are privileged has the burden of establishing the privilege applies and "must make a 'clear showing' that the asserted objection applies." *Metzger v. American Fidelity Assurance Company*, Case No. 05-1387, 2007 WL 3274922 (W.D. Okla.)(quoting *Williams v. Sprint*, Case No. 03-2200, 2006 WL 266599(D.Kan. 2006)). This request does not need to involve any physician, as in the case Hospital cites, involved in Dr. Gorospe's peer review process. Hospital has not made a clear showing that information about Dr. Gorospe's history is limited exclusively to the "peer review process." Instead, Plaintiff is entitled to know whether the Hospital conducted an adequate investigation of Dr. Gorospe's application and the information submitted in support of that application. Those areas are specifically excluded from §1-1709.1's privilege.

Further, Hospital improperly argues that information regarding the National Practitioner Data Bank (NPDB) is privileged pursuant to the Health Care Quality Improvement Act and related regulations. The regulations regarding the NPDB state that the information is *confidential* but does not state that it is privileged. *See* 45 C.F.R. §60.20 ("Information reported to the NPDB is considered confidential. . . .") Confidential information is not privileged information. In fact, the regulations contemplate that a party may receive NPDB information indirectly. "Persons and entities receiving information from the NPDB, either directly or from another party, must use it solely with respect to the purpose for which it was provided." *Id.* The section on confidentiality does not "prevent disclosure of information by a party from its own files used to create such reports where

disclosure is otherwise authorized under applicable state or Federal law." Under Oklahoma state law, the identity and copies of all documents and raw data previously created elsewhere and considered during the peer review process, whether available elsewhere or not, are not considered privileged. *Id.* at §1-1709.1.A.1 and §1-1709.D.1.

More specifically, Plaintiff is entitled to know whether Hospital verified the accuracy of Dr. Gorospe's application for privileges. Dr. Gorospe stated that he had been involved in three medical malpractice actions in the previous five years when in fact he had been involved in a good number more than three. As Hospital notes, "any medical malpractice actions would be a matter of public record, equally available to Plaintiff." Hospital Motion, page 7. Plaintiff is entitled to know whether the three reported malpractice actions were any type of red flag for Hospital, whether Hospital did an independent investigation and actually determined the number of medical malpractice actions involving Dr. Gorospe, and whether the Hospital determined the substance of any of the claims against Dr. Gorospe.

In addition, the Hospital's knowledge should not be limited to any information it had prior to Plaintiff's decedent's surgery. Plaintiff is entitled to obtain discovery on post surgery incidents, which could be relevant to the degree of conduct which Hospital would tolerate from a physician such as Dr. Gorospe prior to taking any affirmative action to protect patients. In the instant case, Dr. Gorospe's conduct following the first, second, and third surgeries performed on decedent are clearly at issue. "Discovery rules are to be accorded a broad and liberal treatment." *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 139 (W.D.Okla.1977) (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964); *Hickman v. Taylor*, 329 U.S. 495 (1947)). Rule 26(b)(1) of the Federal Rules of Civil Procedure

allow discovery of evidence relevant to claims, including information and documents inadmissible at trial but reasonably calculated to lead to admissible evidence.

#7: "The investigation and results of any investigation respecting the competence of Dr. Gorospe before he was granted staff privileges."

As noted above, Plaintiff is entitled to determine what type of investigation Hospital performed and what it learned. For example, certain records show that Dr. Gorospe was summarily suspended from practicing at Bailey Medical Center, summary suspension being a result of serious misconduct. *See Cohlmia v. Ardent Health Services, LLC*, 448 F.Supp.2d 1253, 1261(N.D. Okla. 2006). Despite Hospital's claim that "some of the documents involved in any such investigation may be privileged as well," Hospital's knowledge of Dr. Gorospe's past conduct is not protected by the peer review privilege. *See* Hospital Motion at page 9. If privileged documents are involved, they should have been submitted to this Court along with Hospital's privilege log. Information regarding Hospital's investigation of Dr. Gorospe, if any, is extremely relevant and admissible as to the Hospital's duty to grant staff privileges only to competent physicians as set forth in *Strubhart, supra.*

#8: "The numbers and outcomes of bariatric surgeries, including Roux-En-Y Gastric Bybass surgeries at Wagoner Community Hospital."

Hospital argues that this data has become privileged because the data may have been incorporated into a quality study, a morbidity and mortality study, or a Health Care Quality Improvement Act report. Further, Hospital argues the information is protected by HIPAA. Plaintiff is not asking for any study or reports which Hospital may have prepared. If privileged studies and reports exist, those should be on Hospital's privilege log and the documents have been submitted to this Court for *in camera* review. However, placing data into a report that may be privileged does

not make the underlying data privileged *per se*. Again, under *Strubhart*, Plaintiff is entitled to know whether the Hospital was aware of "untoward results in prior cases." *Strubhart,* 903 P.2d at 273.

In addition, Plaintiff is not seeking information from individual medical records of other patients which might be protected by HIPAA. Even then, regulations explicitly provide that documents containing protected health information may be produced in discovery pursuant to a court order or when a protective order has been entered. 45 C.F.R. §164.512(e)(1)(I), §164.512(e)(1)(ii)(A)-(B).

#9: "Any instances of misconduct by Dr. Gorospe or behavior that was questioned by Wagoner Community Hospital."

As noted above, Plaintiff is entitled to evidence of prior malpractice lawsuits or "untoward results in prior cases" that could show the "hospital knew or should have known staff privileges have been granted to an incompetent doctor." *Strubhart,* 903 P.2d at 273. Under the Hospital's continuing duty to ensure patient safety from physicians who have engaged in a pattern of misconduct (which could be limited to a single severe incident), Plaintiff is entitled to know if Hospital had any such knowledge regarding Dr. Gorospe. "[K]nowledge, either actual or constructive, is an essential factor in determining whether the hospital exercised reasonable care or was negligent." *Id.* at 278 (citation omitted). Hospital has not clearly established that instances of misconduct by Dr. Gorospe that would have raised questions are privileged.

#10: All efforts undertaken by Wagoner Community Hospital to monitor the performance of Dr. Gorospe."

Hospital complains that its efforts to monitor Dr. Gorospe could encompass privileged information included in certain evaluations and statistical reports. Notably, Hospital has produced

not listed any such evaluations or statistical reports on its privilege log. Further, although the Oklahoma Supreme Court has specifically stated that a Hospital may be under a duty to monitor a physician, Hospital again attempts to hide behind another privilege. Hospital has not clearly established that any efforts to monitor Dr. Gorospe are privileged.

## CONCLUSION

A review of Plaintiff's 30(B)(6) deposition subject areas, of Plaintiff's correspondence with Hospital, and of relevant law show that Plaintiff has carefully crafted the 30(B)(6) Notice to seek information that is relevant and essential to a claim against the Hospital for liability based upon the principles set forth in *Strubhart, supra*. Further, Hospital has not established any reason to change the deposition date or to order that the 30(B)(6) subject areas be modified or quashed. For these reasons, Hospital's Motion should be denied.

Dated this 26th day of May, 2015.

                Respectfully submitted,

                LOGAN & LOWRY, LLP
                101 South Wilson Street
                P. O. Box 558
                Vinita, OK 74301
                (918) 256-7511
                (918) 256-3187 (*fax*)
                rrush@loganlowry.com

                By:    */s/ Robert Alan Rush*
                      Robert Alan Rush, OBA #13342

– and –

E.C. Gilbreath, Esquire
GILBREATH LAW FIRM
605 South 21st Street
P.O. Box 1268
Fort Smith, AR 72902
(479) 782-7770
(479) 782-9288 (*fax*)
attysatlaw@aol.com

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

| | |
|---|---|
| Jason C. Rush, Esquire | Timothy G. Best, Esquire |
| Grant A. Fitz, Esquire | Benjamin D. Reed, Esquire |
| RODOLF & TODD | BEST & SHARP |

　/s/ Robert Alan Rush
Robert Alan Rush