**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| FRANCIS HARVEY, Administratrix ) <br> of the Estate of Earlene ) <br> Frances Harvey, deceased, ) <br>     ) <br>           Plaintiff, ) <br>     ) <br> v.     ) <br>     ) <br> LUIS V. GOROSPE, M.D.; ) <br> WAGONER HOSPITAL AUTHORITY ) <br> d/b/a WAGONER COMMUNITY ) <br> HOSPITAL; QUORUM HEALTH ) <br> RESOURCES, L.L.C.; ) <br> JOHN DOES I-X; and ) <br> JANE DOES 1-X. ) <br>     ) <br>           Defendants. ) | Case No. CIV-14-219-RAW |

## O R D E R

This matter comes before the Court on Wagoner Community Hospital's Motion to Quash Plaintiff's Rule 30(b)(6) Notice to Take Deposition of Corporate Representative filed May 22, 2015 (Docket Entry #64). This Motion was referred to the undersigned for final determination by United States District Judge Ronald A. White, the judge presiding over this case, by Order entered May 29, 2015. Upon reviewing the briefing and submissions on the issues presented by the Motion, this Court deems a hearing unnecessary to adjudicate the dispute as it is primarily legal in nature.

Plaintiff commenced this case on June 9, 2014, alleging medical negligence in the performance of elective gastric bypass surgery by Defendant Dr. Luis V. Gorospe and by the medical personnel at Defendant Wagoner Community Hospital managed by

Defendant Quorum Health Resources, Inc. where the surgery was performed. Plaintiff also asserts a claim for negligent hiring, retention and supervision of its employees and negligent credentialing of Dr. Gorospe.

Plaintiff noticed Defendant Wagoner Community Hospital for the deposition of its corporate representative in accordance with Fed. R. Civ. P. 30(b)(6) on May 7, 2015 for the deposition to occur on May 19, 2015. Through a series of communications between counsel, counsel negotiated the date for the deposition. In the process, however, a dispute became apparent regarding the content and extent of the questioning of the representation.

Plaintiff's counsel identified fourteen areas of inquiry for the representative in correspondence to his counterpart. Defendants' counsel responded that much of the information sought was protected by the peer review privilege and sought clarification on some nine of the fourteen areas. Plaintiff's counsel provided this clarification asserting that the negligent credentialing claim and the attendant case authority provided access through discovery of much of the information sought. Ultimately, Defendants filed the subject Motion to quash the Notice seeking to take Wagoner Community Hospital's corporate representative's deposition.

At the heart of the conflict between the parties lies the peer review privilege expressly established by Oklahoma law. The applicable statute provides

> Peer review information shall be private, confidential and privileged except that a health care entity or county medical society shall be permitted to provide relevant peer review information to the state agency or board which licensed the health care professional who provided the health care services being reviewed in a peer review process or who is the subject of a credentialing or recredentialing process, with notice to the health care professional.

Okla. Stat. tit. 63 § 1-1709.1(B)(1).

The "peer review information" protected by this privilege includes "any process, program or proceeding, including a credentialing or recredentialing process, utilized by a health care entity or county medical society to assess, review, study or evaluate the credentials, competence, professional conduct or health care services of a health care professional." Okla. Stat. tit. 63 § 1-1709.1(A)(6). Persons involved in a peer review process cannot be required to testify regarding the peer review process in any civil proceeding or disclose by responses to written discovery requests any peer review information. Okla. Stat. tit. 63 § 1-1709.1(E).

The privilege is not without its limitations in legal claims asserting negligence in the credentialing or recredentialing process. Specifically, the exception drawn in the statute provides

> In any civil action in which a patient or patient's legal representative has alleged that the health care entity was independently negligent as a result of permitting the health care professional to provide health care services to the patient in the health care entity, the credentialing and recredentialing data, and the recommendations made and action taken as a result of any peer review process utilized by such health care entity

3

regarding the health care professional prior to the date
of the alleged negligence shall be subject to discovery
pursuant to the Oklahoma Discovery Code.

Okla. Stat. tit. 63 § 1-1709.1(D)(1)

The statute also defines "credentialing and recredentialing data" as

a. the application submitted by a health care professional requesting appointment or reappointment to the medical staff of a health care entity or requesting clinical privileges or other permission to provide health care services at a health care entity,

b. any information submitted by the health care professional in support of such application,

c. any information, unless otherwise privileged, obtained by the health care entity during the credentialing or recredentialing process regarding such application, and

d. the decision made by the health care entity regarding such application.

Okla. Stat. tit. 63 § 1-1709.1(A)(1).

It is against this statutory backdrop that the propriety and discoverability of the information reflected in Plaintiff's requested areas of inquiry are examined. The deposition Notice of Defendant's corporate representative reflected fifteen proposed areas of inquiry. Defendant Wagoner Community Hospital objects to areas no. 5, 7, 8, 9, 10, 11, 12, and 13. This Court will restrict its analysis to these specifically identified areas in turn.

**Inquiry No. 5 - The history of Dr. Gorospe, including any medical malpractice actions or allegations involving Dr. Gorospe.** Defendant first objects that any lawsuits filed against Dr. Gorospe

are a matter of public record.  While this may be a true statement, it does not represent a legitimate basis for refusing to provide the information.  Defendant's second basis for objecting to this area of inquiry is founded in limiting Plaintiff's discovery to matters occurring before the date of the alleged.  Plaintiff repeatedly refers to the case of <u>Strubhart v. Perry Mem. Hosp. Trust Auth.</u>, 903 P.2d 263 (Okla. 1995) as the authority for seeking the discovery related to the negligent credentialing claim.  The Oklahoma Supreme Court in <u>Strubhart</u>, however, only references the relevance of the hospital's knowledge of prior conduct in conferring liability.  <u>Id</u>. at 273.  Information which the hospital may have acquired post-incident is not relevant to the claim.

Defendant also asserts the prohibition from compelling a participant in the peer review process to testify as a basis for objecting to this area.  At this time, this Court does not have information as to the identity of the corporate representative, whether he or she participated in the peer review process, and whether the information he or she will provide in response to this area of inquiry was developed during the course of the peer review process.  Until the particular question is asked in this area and the source of the information is developed, it is impossible to proactively rule upon the propriety of Plaintiff obtaining this information.

**Inquiry No. 7 – The investigation and results of any**

**investigation respecting the competence of Dr. Gorospe before he was granted staff privileges.**

Defendant asserts the peer review privilege in response to this inquiry and also seeks to restrict the time frame of any response to dates prior to the incident from which this action arises. The cause of action established in Strubhart contemplates that "knowledge, either actual or constructive, is an essential factor in determining whether the hospital exercised reasonable care or was negligent" in demonstrating whether the hospital failed to act against an allegedly incompetent doctor. Id. at 278. To this end, Plaintiff should be permitted to inquire as to whether an investigation occurred prior to granting staff privileges and the results of any such investigation in order to determine the level of knowledge of Defendant Wagoner Community Hospital of any allegedly incompetent actions by Dr. Gorospe. Permitting the development of such discovery does not run counter to the stated goals of protecting peer review information. As stated, this information is only relevant to the period prior to the incident involved in this lawsuit.

**Inquiry No. 8 - The numbers and outcomes of bariatric surgeries, including Roux-En-Y Gastric Bypass surgeries at Wagoner Community Hospital.**

Defendant contends any such information concerning other patients may have been included in morbidity and mortality or

6

quality studies which would be protected by the peer review privilege. Defendant also asserts the information cannot be disclosed under HIPAA. Plaintiff is not seeking any studies or collected report nor does she seek protected patient information. Rather, by its terms, the request is for raw data which is neither protected by the privilege nor HIPAA. Plaintiff may obtain this information.

**Inquiry No. 9 - Any instances of misconduct by Dr. Gorospe or behavior that was questioned by Wagoner Community Hospital.**

Defendant again asserts the potential applicability of the peer review privilege. Until the particular questioning occurs and the content and source of the response is determined, it would be imprudent for this Court to issue a blanket prohibition or carte blanche license for unfettered questioning. Certainly, any "misconduct," presuming it is related to the administration of professional medical services, would be relevant to the issue of the hospital's knowledge of Dr. Gorospe's alleged malfeasance. Whether it is protected from disclosure under the privilege remains unknowable at this time.

**Inquiry No. 10 – All efforts undertaken by Wagoner Community Hospital to monitor the performance of Dr. Gorospe.**

Defendant contends any review of Dr. Gorospe's performance would be contained in a professional practice evaluation which would be a part of a peer review process protected by the

7

privilege. This Court concurs with Plaintiff that any such reports should have been included in the privilege log ordered to be produced by Judge White on May 26, 2015. None are included in the log. The corporate representative can certainly testify about the hospital's efforts to monitor Dr. Gorospe's performance without touching upon the content of any professional evaluation which might be subject to the privilege.

**Inquiry No. 11 – Any examples or instances of incompetent behavior by Dr. Gorospe.**

Defendant contends any such information would be subject to HIPAA and preclude production. Defendant's corporate representative may testify on this issue without identifying the particular patient to which the incident might refer. The notification and protective provisions of HIPAA may be followed subsequent to such testimony should Plaintiff seek the identity or particular identifying information on the individuals involved.

**Inquiry No. 12 - Any reports of any staff, independent contractors, employees, or patients of Wagoner Community Hospital respecting Dr. Gorospe.**

Defendant seeks to restrict the testimony of its corporate representative to variance reports prior to this incident on November 13, 2012. This Court agrees that this time period restriction should be imposed. Actions taken after the incident should have no relevancy to the claims asserted in this case.

**Inquiry No. 13 - The doctors and qualifications of doctors cross-covering Dr. Gorospe's surgery patients.**

Defendant argues the credentialing of other physicians at the hospital is privileged since they have not been included as parties to this action. The privilege would not appear to apply since Plaintiff is not specifically seeking credentialing information as defined by the statute. Plaintiff states that she "is entitled to know whether the Hospital had arrangements for cross coverage for bariatric patients." While this Court is not certain if another surgeon was called upon to perform medical services at the hospital due to Dr. Gorospe's unavailability, the information is certainly discoverable. Plaintiff should be cautioned, however, that she cannot create a claim out of ether. If she is merely attempting to show that something untoward could have happened should Dr. Gorospe have not been present during the decedent's stay at the hospital, the claim would be illusory and theoretical at best.

**Privilege Application to the National Practitioner Data Bank ("NPDB").**

Defendant has included numerous reports from the NPDB in the privilege log provided to the Court and opposing counsel pertaining to Dr. Gorospe, claiming the information is privileged and not subject to production. The information includes malpractice actions filed against physicians and whether payment was made on the claims. 45 C.F.R. § 60.7. Physician's license suspensions and

revocations are also report to the NPDB. 45 C.F.R. § 60.8. On the issue of disclosure, the regulations do not state the information contained in the NPDB is privileged but, rather, it is confidential. Specifically, the regulations state

> (a) Limitations on disclosure. Information reported to the NPDB is considered confidential and shall not be disclosed outside the Department of Health and Human Services, except as specified in §§ 60.17, 60.18, and 60.21 of this part. Persons and entities receiving information from the NPDB, either directly or from another party, must use it solely with respect to the purpose for which it was provided. The Data Bank report may not be disclosed, but nothing in this section will prevent the disclosure of information by a party from its own files used to create such reports where disclosure is otherwise authorized under applicable state or Federal law.

45 C.F.R. § 60.20(a).

Plaintiff states the information will verify the accuracy of Dr. Gorospe's application for privileges and the hospital's knowledge and reaction to the information. Plaintiff also contends she should be permitted to obtain information in the NPDB from after the incident. This Court remains skeptical as to the relevancy of any such subsequent information and will not permit its production at this time. The information in Defendant's possession contained in the NPDB prior to the incident is not privileged and should be produced to Plaintiff under an appropriate protective order. It appears that an Agreed Protective Order was entered in this case on October 22, 2014. Should this Order be adequate to protect the disclosure of the NPDB information in the

opinion of counsel, no further order need be submitted. If not, the parties shall submit an additional agreed protective order to specifically cover this information.

IT IS THEREFORE ORDERED that Wagoner Community Hospital's Motion to Quash Plaintiff's Rule 30(b)(6) Notice to Take Deposition of Corporate Representative filed May 22, 2015 (Docket Entry #64) is hereby **GRANTED**, in part, and **DENIED**, in part, as more fully explained herein. Counsel shall identify and schedule the deposition of the Rule 30(b)(6) corporate representative as soon as possible.

IT IS SO ORDERED this 23rd day of June, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE